# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

SONDRA G. DAVIS,                :

    Plaintiff,                  :

vs.                             :       CA 07-0572-C

MICHAEL J. ASTRUE,              :
Commissioner of Social Security,
                                :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Docs. 17 & 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the

administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the May 7, 2008 hearing before the undersigned, the Court determines that the Commissioner's decision denying benefits should be affirmed.[1]

The Administrative Law Judge (ALJ) made the following findings:

**3. The claimant has the following severe impairments: mild Chiari formation and disk herniation (20 CFR 404.1520(c) and 416.920(c)).**

. . .

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).**

. . .

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push and pull objects [weighing] up to 10 pounds frequently, and objects [weighing] up to 20 pounds occasionally. She can sit, stand and/or walk for 6 of 8 hours. She is not otherwise limited.**

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

. . .

**6.   The claimant is capable of performing past relevant work as a packer, cashier, or poultry plant worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

. . .

**7.   The claimant has not been under a "disability," as defined in the Social Security Act, from January 16, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Tr. 19, 20 & 23)  The Appeals Council affirmed the ALJ's decision (Tr. 4-6) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history.  *Id*. at 1005.  Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work

history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Court is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform past relevant work as a packer, cashier, or poultry plant worker, is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, the plaintiff's sole contention of error is that the ALJ erred in determining that her subjective complaints of disabling pain were inconsistent with her symptoms and objective findings.

The Eleventh Circuit has established a three-part pain standard that applies when a claimant attempts to establish her disability through testimony of pain.  "The pain standard requires (1) evidence of an underlying medical

condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). "A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain. 20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The ALJ specifically recognized the three-part pain standard (*see* Tr. 20) and evaluated plaintiff's pain complaints in the following manner:

> [T]he undersigned [has] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. . . .
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible.

Initially, in April 2004, the claimant provided information to the Social Security Administration that she experienced the following symptoms: numbness in her right arm and leg; trouble walking; reduced strength in her right arm; pain in her back, right arm, and right lower extremity. She indicated she was able to engage in the following activities: driving her daughter to and from school, 10 miles each way; household chores, including daily cleaning, twice-weekly laundry with hanging the clothes out to dry, and cooking two to three times a week; shopping for household items including carrying one bag at a time.[2] In September 2004, she indicated that the pain had increased to include left arm and leg pain, and constant lightheadedness.

The claimant's credibility is undermined to the extent that her reported pain is inconsistent with her symptoms as reported to her treatment providers and with their objective findings. Claimant was initially seen by Keith Guinn, M.D., in December 2003 with a two-day history of right sided shoulder "discomfort" and numbness. Her examination was essentially normal regarding strength and range of motion, but with a "minimal muscle spasm" noted. When she returned in three weeks as scheduled, she was diagnosed with "subjective right arm pain" by Dr. Guinn. She returned again in late January, with pain that "come and goes." Her symptoms at that time were reported to include the following: right arm pain and numbness;

---

[2] *See* 20 C.F.R. § 404.1529(c)(3) (2007) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.").

dead feeling in her right hand and inability to use it; pain in her right shoulder or elbow; right leg pain and numbness; and fatigue. However, her provider noted her strength as 5+ and that her reflexes were intact. She was placed on Neurontin.

In early March 2004, consultative examination with David Malloy, M.D. at Dr. Guinn's request found her reported symptoms as follows: intermittent sharp pain in the right forearm and numbness in the right hand and forearm associated with right scapular region pain, with symptoms lasting 30 minutes before resolving spontaneously, and numbness without pain in the right lower extremity. She indicated that her symptoms had been relatively stable, without worsening or improvement; however, she did not report fatigue or the inability to use her hand at that time. She also indicated that she had stopped taking Celebrex and Neurontin because they were not helping. Physical examination found as follows: normal affect and attention span; full range of motion of the neck; normal muscle tone, strength and sensation; and unremarkable stance and gait.

It does not appear from the medical evidence [of] record that claimant sought any further treatment until March 2005, despite having insurance from the Alabama Medicaid Program. At that time, Katherine Hensleigh, M.D., noted a reported lumbar disc herniation[]; however, there is no objective or other evidence of such in the record. Dr. Hensleigh also indicated that claimant reported "intermittent sensory paresthesia" on the right side, with numbness in the arm and pain in the leg; on examination, slightly decreased right side reflexes were noted. The claimant returned the following month reporting increasing lower back and right leg pain, and [went] again in July and August with reported pain; she was referred to see Bryan Givhan, M.D. of West Alabama Neurosurgery & Spine, P.C., by Dr. Hensleigh.

In August 2005, Gr. Givhan found claimant's reported symptoms to include the following: primary neck pain with back pain and some intrascapular pain; no weakness or numbness in

7

her hands but some intermittent right hand and arm pain; <u>no</u> sensory changes over the shoulder; and <u>no</u> reported gait disturbance. Dr. Givhan's examination found claimant as follows: healthy-appearing and awake, alert and oriented with fluent and appropriate speech; with mild reversal of the normal cervical lordotic curve at C4; and manifesting 5/5 motor strength and intact sensory examination, but with diminished deep tendon reflexes. Dr. Givhan recommended epidural injection but noted that because the claimant was not having ongoing neurologic signs supporting any need for surgery, the physicians should be very conservative regarding treatment.

Just two months later, in October 2005, consultative examination by Huey Kidd, D.O., found that claimant was reporting daily pain and numbness in her right arm and leg for two years, with relief from medication and sleep. Dr. Kidd observed as follows: ambulation without difficulty despite the fact that the claimant was wearing three-inch heels; full range of motion of her upper extremities; 5/5 strength and intact deep tendon reflexes; and alert and interactive affect. He noted that claimant was not fully cooperative with the examination: she first indicated she did not know if she could lift her arms over her head, but then raised them without difficulty; she refused to walk on her toes or heels, but, as noted, ambulated in three-inch heels without difficulty; and refus[ed] to bend beyond 10 degrees to touch her toes, with crying and non-performance of the task.

In early 2006, at her own request[], claimant was referred to neurologist Thomas Emig, M.D. Dr. Emig found claimant reporting severe chronic <u>low</u> back pain, with "episodes" of relative numbness and weakness in her right arm and leg, and reported transient episodes where she was unable to move below her neck. Dr. Emig indicated that her motor strength was 5/5 throughout, but was "effort dependent," and found no atrophy and normal tone. He indicated that her reflexes were 1-2/4 throughout, and her gait was antalgic but with fair tandem walking. He indicated that the hydromelia found [on] the MRI

was "unremarkable" and that the source of her intermittent right arm and leg numbness and weakness was "uncertain." Dr. Emig saw her later the same month with the benefit of MRI results. He found as follows: her brain MRI was "generally unremarkable" with the exception of the "mild cerebellar tonsillar ectopia,["] i.e., the Chiari formation; the MRI showed "minimal" hydromelia that he believed "would be asymptomatic"; Neurontin could be discontinued if it was not helping, and Tramadol for pain should be minimized; and Topamax could be tried for her reported headaches.

As noted above, the claimant's credibility is undermined to the extent that her reported pain is inconsistent with her symptoms as reported to her treatment providers and with their objective findings. Her testimony that she was basically incapable of anything was not found credible given the lack of support from the medical record. Additionally, her credibility regarding her inability to work is undermined by the evidence of her minimal work history throughout her life extending well before the alleged onset of a disability.

The claimant's allegations of disability are also undercut by the opinions of the physicians who have seen her. Dr. Malloy, who performed the first consultative examination, recommended that claimant should treat her symptoms with mild anti-inflammatories and that surgery was not indicated. Dr. Kidd, a doctor of orthopedics licensed to practice and dispense medications by the State of Alabama, indicated "I really don't see any reason why this lady can't work." Treating physician Katherine Hensleigh noted that she encouraged the claimant to go to school.

The opinions of the state disability evaluators were given significant weight, as they were consistent with each other and with the opinion of the testifying medical expert. All found the claimant capable of frequent lifting of 10 pounds and occasional lifting of 20 pounds, and of sitting, standing and/or walking for 6 of 8 hours, without other restrictions.

> Although an opinion was provided by Dr. Emig, reduced weight is due that opinion. Dr. Emig saw the claimant on two occasions in January 2006. The April 2006 opinion he provided regarding her limitations is inconsistent with his objective findings during the course of those examinations. Further, Dr. Emig himself indicated that he did not base his opinion on his objective findings, but rather relied on claimant's subjective reports as the basis for his opinions.

(Tr. 20-22 (internal citations omitted; emphasis in original; footnote added))

The foregoing analysis performed by the ALJ reflects his consideration of plaintiff's treatment history for pain. However, the ALJ's clear recognition that this is a pain case does not compel his acceptance of plaintiff's allegations of the intenseness and persistence of the pain inasmuch as the record reflects that Davis is capable of performing work activities even in light of her pain. In particular, no treating or examining physician opined that plaintiff was incapable of performing work activity on account of physical limitations caused by her pain. Only one examining physician, Dr. Emig, provided an opinion inconsistent with the ability to work; as pointed out by the ALJ, however, Emig based his opinion not on his own objective clinical findings but, instead, entirely upon Davis' subjective complaints.

Additionally, the foregoing analysis performed by the ALJ reflects a proper application of this circuit's three-part pain standard. In the administrative decision, the ALJ clearly recognizes several underlying medical

conditions, that is, mild Chiari formation and disk herniation. (Tr. 19; *see also* Tr. 20) The record supports the ALJ's determination that the objective medical evidence does not confirm the severity of pain plaintiff alleges arise from the foregoing conditions. (Tr. 94-95, 104, 116-117, 127-128, 132-140, 146-147, 152-153 & 155-159) Notably, while MRI results reflected a small mid-line herniation at C4-5 (Tr. 104) and minimal Chiari I malformation (Tr. 139), surgery was rejected as an option (Tr. 117 ("At this time I would not suggest surgical intervention. [] Continue symptomatic treatment with mild anti[-]inflammatories.")) and there are no significant findings of muscle weakness, muscle spasms or a decrease in Davis' range of motion. (*See, e.g.,* Tr. 95 (strength 5+, normal range of motion); Tr. 117 (full range of motion in the neck without exacerbation of symptoms); Tr. 128 (full range of motion in her upper extremities and 5/5 strength); Tr. 133 & 136 (strength 5/5 throughout); & Tr. 146 (motor exam 5/5 in all muscle groups in both the lower and upper extremities)) In addition, the evidence of record as a whole does not reflect that the identified medical conditions are of such a severity that they can reasonably be expected to give rise to the disabling pain Davis alleges. In this regard, plaintiff has received only one epidural steroid injection to manage her pain (*see* Tr. 158) and surgery has been rejected as an option (Tr. 117). When

11

this evidence is combined with the evidence of record that plaintiff can perform substantial work activity (Tr. 129-131; Tr. 224 (medical expert's testimony that plaintiff would be limited to light work activity))[3] and plaintiff's initial report of her daily activities (*see* Tr. 73-76 ("I take my daughter to school, clean the house, cook dinner, and twice a week do the laundry.")), it need be recognized that there is substantial support in the record for the ALJ's determination that Davis' back conditions could not reasonably be expected to give rise to the disabling pain she alleged during the administrative hearing.

In sum, the Court finds that the only manner in which the medical evidence of record in this case can be resolved is by recognizing that plaintiff experiences pain but that such pain does not preclude her from engaging in all work activity. More specifically, the evidence of record supports the ALJ's determination that plaintiff can engage in light exertional work activities and can, therefore, perform her past relevant work as a poultry plant worker, cashier, or packer (Tr. 228-229 (vocational expert's testimony)). Therefore, the Commissioner's fourth-step denial of benefits is due to be affirmed.

---

[3] Plaintiff's counsel informed the undersigned during oral argument that the pain medications plaintiff has been prescribed are indicated for the relief of moderate to moderately-severe pain.

## CONCLUSION

The Court **ORDERS** that the Commissioner's decision denying plaintiff benefits be affirmed.

**DONE** this the 15th day of May, 2008.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**